Whenever you're ready. Thank you very much, Mr. Chief Judge. May it please the Court. My name is Sujit Raman. I'm the Appellate Chief for the District of Maryland, appearing on behalf of the United States. Your Honors, the District Court erred in dismissing the indictment in this case because there was nothing fundamentally unfair about the defendant's Whatever procedural violations occurred during those proceedings did not actually prejudice Mr. Lopez because he would have been deported regardless. And whatever prejudice he may have suffered through immigration officials' misapplication of the law in finding him to be an aggravated felon was not linked to any threshold due process violation because executive or educative officials do not violate an alien's due process rights by faithfully and correctly applying then-binding circuit authority to his case. In any event, as three circuits have squarely held, prejudice in this context should be evaluated based on the law as it was understood at the time of the defendant's removal. And under that standard, it is clear that Mr. Lopez was not prejudiced because he was statutorily ineligible for relief from removal and thus there was no reasonable probability that he would not have been removed. Accordingly, we ask this Court to reverse the order granting the defendant's motion to dismiss and to remand the case to the District Court with instructions to reinstate the indictment. I would like to begin, Your Honors, with a discussion of U.S. v. Wilson, which I think is really the clearest authority on point in this case and follows directly from why the District Court should be reversed. In that case, the defendant was a lawful permanent resident who in 1986 was convicted of a drug offense. In 1996, a decade later, he was brought before an immigration judge, conceded his removability, and asked for Section 212C relief under the INA. The immigration judge denied relief in that case in 1996 and on appeal to the BIA, the Bureau of Immigration Appeals, the BIA held incorrectly, as it later turned out in light of the Supreme Court's decision in INS v. St. Cyr, which was decided five years later, that the defendant was statutorily ineligible for relief from removal. Later, Mr. Wilson reentered the United States illegally, was convicted, and appealed to this Court. And this Court held that there was no due process interest at stake in the first place. In other words, even though immigration officials misapplied the law in 1996 by not permitting Mr. Wilson to seek 212C relief, even though he should have been allowed that opportunity, as the Supreme Court later clarified in INS v. St. Cyr, he had no tolerable claim on appeal of his illegal reentry conviction because there was no due process interest at stake, as the Court held. Where the issue is the question of purely discretionary relief, which 212C relief was, and certainly in this case, the opportunity to seek voluntary departure is, no dispute about that, where the interest sought is purely discretionary. There is no fundamental right, there is no due process interest at stake. And so this Court affirmed the illegal reentry convictions in Wilson. We would submit that this case is a direct descendant of Wilson. Here, in 2007, when the defendant was subject to expedited removal, binding circuit authority in this Court, a long line of cases going back to U.S. v. Kirksey, held that Maryland second-degree assault was subject to a modified categorical approach. Now, we do not dispute here on appeal that that decision is incorrect. As this Court held in Royal, applying the Supreme Court's decision into camp, Maryland second-degree assault is categorically not a crime of violence or a violent felony or an aggravated felony for purposes of the INA. But nonetheless, that misapplication of the law in 2007, when immigration officials did apply the modified categorical approach, and under this Court's then-binding authority, correctly and faithfully found that Mr. Lopez was an aggravated felon, did not violate his due process rights. Because again, as Judge Chertoff noted in Torres, the Third Circuit case that we've cited in our pleadings, a misapplication of the law without more does not constitute a fundamental miscarriage of justice or a due process violation. Counsel, so what do you mean in your brief when you say that the camps may be theoretically retroactive? That confused me because it suggests that we can go back and take a second look at what happened before the camp. Our point, Your Honor, in saying that the camp is retroactive is to suggest that when the Supreme Court or a Circuit Court of Appeals interprets a statute, it is interpreting what that statute meant going back to the time of enactment. So again, we do not dispute that the law in effect in 2007, in a theoretical sense, was that Mr. Lopez was not an aggravated felon, at least in terms of his second-degree assault conviction. But all immigration officials have to do, at least in the Ninth Circuit, which again has a different set of law here, is advise an alien of his apparent eligibility for relief from removal. And again, Mr. Lopez in 2007, whatever the law theoretically may have been in terms of the meaning of the aggravated felony provision of the INA, whatever theoretically it might have been, the IJ, or the immigration official who is looking Mr. Lopez in the eye and saying, I see the documents here and you've committed a Maryland second-degree assault, which under the modified categorical, which qualifies as an aggravated felony, you, Mr. Lopez, are an aggravated felon. And so that immigration official did not violate Mr. Lopez's due process interests because he advised him or didn't advise him based on the law as it currently existed, as it then existed. So as I say, Giaz, we do not dispute that DeCamp is, quote-unquote, retroactive because it is a statutory decision of the Supreme Court that clarified or underscored what the INA meant from the very time of enactment. But the fact that immigration officials misapplied the law under later sort of interpretations of the law does not mean that somehow the defendant or the alien was deprived of due process. Well, I guess the reason why I was concerned about that is retroactivity, at least in the context of AEDPA and other scenarios, means something substantively for a petitioner or a defendant. But you seem to be suggesting that it doesn't mean the same thing in this context. Respectfully, I would disagree with that, Your Honor. Of course, DeCamp, and we've talked about this a little bit in our briefing, several, of course, have found that DeCamp is not retroactive on collateral review. The Justice Department's position in this appeal is that it is retroactive, again, as I say, in a theoretical sense. But that doesn't mean that Mr. Lopez can still collaterally attack what was a perfectly valid removal order in 2007 and is still a perfectly valid removal order. In other words, again, as I say, a misapplication of the law does not prejudice a defendant when he would have been deported anyway. I think that's sort of my point. Again, the idea that there was a misapplication of the law does not mean that his due process rights were even violated, because he was given all the due process he was entitled to at the time. Really, what the defendant is asking this Court to find is that immigration officials need to predict the law. They need to be able to say, under current binding Fourth Circuit authority, you are an aggravated felon, Mr. Lopez, but guess what? I don't think you are for whatever reason, and so I'm going to advise you of a purely discretionary form of relief to which you're actually not entitled to under current law. That certainly can't be the right answer. And so that's why there was no fundamental unfairness. There was no sort of inherent breakdown in justice when Mr. Lopez was correctly, under this Court's binding authority, not advised of his eligibility to seek voluntary departure. Even if we go past that point, Judge Diaz, let's assume there was a due process violation here, which we should not, and Wilson makes clear there was no due process violation. Let's assume one. There's no prejudice to Mr. Lopez, because as every circuit to address this issue is held, you evaluate prejudice based on the law as it was understood at the time of the removal, and there is no dispute. In 2007, at the time of his removal, Mr. Lopez would have been deported regardless. And that's, you know, Baptiste, the Seventh Circuit held that. Sotomayor is the first case I cited in my 28-J letter from the other day. Universally, the circuits have held. I thought you had conceded that there was a due process violation in the different context of the interpreter issue. That's absolutely correct, Judge Diaz. So there was a due process violation with respect to the lack of translation. And then the question becomes, what was the actual prejudice to the defendant as a result of that lack of translation? And again, as the law, I think, is quite clear, certainly in the Ninth Circuit and in other circuits, numerous courts have held even where a defendant or an alien is deprived of his right to receive notice of the charges and so on and so forth, there is no prejudice if he would have been removed regardless. And we cited cases in our briefing. Reyes Bonilla is a Ninth Circuit case. Ramos is a Ninth Circuit case. These are all decisions where, again, the law that's applied on the prejudice inquiry is the law at the time of the removal. And so I certainly don't want to get up in here and say that it was immaterial. I mean, certainly it's not something we're proud of, that Mr. Lopez was not properly given, you know, his notice of the translation of the notice of intent. But the real question for this court and really for the district court is, was that fundamentally unfair? And there is no fundamental unfairness to a defendant for purposes of the illegal reentry statute if he would have been deported anyway. So that's, Your Honor, why I think even if you assume a due process violation with respect to the notice of the lack of translation, Mr. Lopez is still not entitled for relief because he was not prejudiced. You said we look at prejudice as the law was. But in this case, even if we looked at prejudice as the law is, do you still think that he would meet that stand because he was deportable anyway? Sitting here today in 2015, Your Honor, I would, I would submit that Mr. Lopez is not an aggravated felon under current understandings of the law post-decamp. And so he would be eligible if he had been prosecuted today. Excuse me, if he had been removed today and then illegally reentered, he would be eligible to at least seek voluntary departure. I hope that answers Your Honor's question. And let me, if I could, Your Honor, sort of add to that. There's sort of an interesting timing issue here because, of course, Mr. Lopez admitted in the district court, or at least to ICE officials, that he had illegally reentered in 2008 after, after being deported in 2007. Just by the accident of circumstance, he wasn't encountered again until last year, 2014. But the reality is, if he had actually been encountered at any point between 2008, which is when he self-admittedly reentered the United States illegally, and 2013, which is when the Supreme Court decided to camp, I think even he would concede he would have no claim here today because binding authority in this court between 2008, when he illegally reentered, and 2013 squarely held that he would have been still an aggravated felon. And so that's why, you know, we talk about timing. I think Your Honor has, I think, appropriately pointed out, well, why is it unfair to a defendant that just because he happens to be charged in 2015 or he wasn't removed until 2015, all of a sudden there's a different situation here? I respectfully would submit the timing issue cuts both ways. Just because he was able to elude federal immigration officials for the six years between when he illegally reentered and was actually charged with illegal reentry certainly shouldn't redound to the defendant's benefit in this case. So for all those reasons, Your Honors, and I, I, there are a number of cases here. You know, Wilson is something we've cited in our briefing. Torres is a Third Circuit case, which we've also cited in our briefing. Another case where in 1998 the defendant was removed and was denied the ability to seek discretionary relief, 212C relief, because in that time period between 1996 and 2001, when the Supreme Court decided St. Cyr, there was just a widespread misapplication of the law. Immigration officials and the Attorney General had taken a view that the various AEDPA and IRIRA modifications did apply retroactively, that they essentially eliminated all relief. And the Supreme Court in 2001 said no, those elimination of relief only applies prospectively. Torres was subject to a misapplication of the law in 1998 when he was removed. Yet nonetheless, the Third Circuit affirmed his illegal reentry prosecution because the court said a simple misapplication of the law is not a due process violation, especially where adjudicative or executive officials faithfully and correctly apply the law as it then was understood. El-Shami is a case I know Judge Gregory is very familiar with. Very similar situation. That defendant in 1993 was ordered removed in absentia. He never got his hearing because he never received notice. The law in 1993 entitled Mr. El-Shami to a hearing where he could demonstrate his eligibility or his substantive eligibility for 212C relief. And this court reversed his illegal reentry conviction because at the time of his removal, for which he never received notice of, and Judge Diaz, that's clearly a due process violation, he could have and probably would have fundamentally different than this case, where in 2007, which is the relevant time frame here, Mr. Lopez was not entitled to any kind of relief because under this court's then-binding authority, he was an aggravated felon. Your Honors, I do see my time is running down. I certainly reserve some time for rebuttal. I would just point the Court to the Ninth Circuit cases, Vidal-Mendoza, Gomez, Baptiste. These are all, that's a Seventh Circuit case. These are all here. And there is not one case that I'm aware of where a Circuit Court has endorsed the district course reasoning in this case. So for all those reasons, Your Honor, if I could reserve my time, I appreciate that. Thank you. Ms. Hill. Thank you, Your Honors. The facts of this case illustrate why the government's concerns about the finality of removal orders and placing undue burdens or expectations on immigration officials are so misplaced. As we speak, Mr. Lopez-Colazo is best known for his work on immigration back in Mexico, deported again with a new order of removal. If he returns unlawfully, the government can charge him with unlawful reentry based on that new removal order. What the government loses here is one criminal conviction, two or three criminal history points at the most. Weigh this against the unfairness to Mr. Lopez-Colazo, who, according to the government, should be liable for a felony criminal offense because of an administrative decision that even the government concedes was rife with error, constitutional error. This is the fundamental unfairness that Judge Hollander remedied by dismissing the indictment in this case. Her decision should be upheld. Now, in concluding that Mr. Lopez-Colazo's removal proceeding was fundamentally unfair, the district court was correct in looking at the prejudice part of the analysis because the government does indeed concede there was a due process violation, that the categorical approach that has been in place since Taylor and was merely clarified by Decomp should apply. But even under the law, as it was incorrectly being applied to second degree assault by this court at the time of Mr. Lopez-Colazo's removal proceedings, ICE officials got it wrong. Officer Kearns, the ICE official who made the determinations in this case, didn't know what the modified categorical approach was, let alone is there any evidence that he actually applied it. Now, this fact supports an alternative theory by which this court could find that Mr. Lopez-Colazo's removal proceeding was fundamentally unfair. But this fact also demonstrates what a complete, yes. Why is that alternative argument not waived? The argument is not waived because it was preserved in both in the pleadings below and orally in court, your honor. Argument with respect to the application of a modified categorical approach was not waived? That's correct, your honor. So where in the record it is, is on the joint appendix page 196, footnote 11. So that is in Mr. Lopez-Colazo's, one of his pleadings, the written pleadings before the hearing, where counsel wrote, even if the applicable law at the time was Kirksey and its progeny, the government still loses. First, there is no evidence that the immigration official applied the categorical or the modified categorical approach to the convictions in this case. So that's one place, your honor. And then second, and this is at joint appendix page 542. Orally, counsel said, so I am not conceding that even under the modified categorical approach, which of course was never really conducted at that time. It's just a fiction now in hindsight that never would have been satisfied if ever was done. Did the district court rule on that? The district court did not rule on that because the district court did not have to rule on that. And I would argue that counsel probably did not expound on that because counsel was able to see that the district court seemed to be on board regarding the first argument, which is that in assessing prejudice, we should be applying the correct law that Descamp told us you all should have been applying all along. That's what I'm assuming happened there. But the government was If you look at the cross-examination that I cited in my brief, the cross-examination elicited that argument as well. Officer Kearns was repeatedly asked about which documents he considered and shared with the ICE attorney that he had to consult with, including whether either of them had looked at the transcripts of the plea colloquies in the case. And counsel for Mr. Lopez-Colazo specifically asked Officer Kearns if he was familiar with the categorical or modified categorical approaches. So I mean, the government was on notice of this alternative argument. And honestly, Your Honor, I mean, that's why we drop footnotes. That's what we do is it's to preserve these arguments. I don't think this is a case where under any of the law regarding waiver, you can find that this issue is right way. Let me ask you with respect to the contention of a constitutional error. So I think the government has conceded that there was error in the lack of having a Spanish translator. But their argument with respect to that is that it wouldn't have mattered because the laws that existed at the time wouldn't have changed the result no matter who was in the courtroom. So are you alleging that there was also a constitutional error with respect to the application of the law at the time? Your Honor, I actually presented two separate, I'm sorry, three separate potential constitutional errors. There is the error that the government admitted, and I want to clarify what this is. This was an administrative proceeding. So there was no courtroom, there was no judge, and there was no interpreter. There was a piece of paper that was in English. And that piece of paper charged him, told him what he was charged with, and told him about any opportunity he had for administrative review or judicial review. That piece of paper was not proven to have been given to him in his language, which is required under ICE regulations. And also, as a practical matter, the judge found that he was not then given a meaningful opportunity. He wasn't given notice of the charges and a meaningful opportunity to respond. So that is the constitutional due process violation. And so our argument then is, in assessing prejudice, this court could do what Judge Hollander did, which I believe is correct, and which other courts, despite what the government said, has done, which is to apply the correct law, as we know it should have been applied at the time, to say, had he had the opportunity to seek judicial review, he would have argued, I am not an aggravated felon because second degree assault is categorically not a crime of violence, and Maryland theft is categorically not theft. Well, not necessarily, Your Honor. Not necessarily. I mean, we, at the time that this court was holding that second degree assault was a crime of violence, we didn't agree, and we were valiantly arguing that it wasn't. And so, A, he may have prevailed there. Winning the argument are two different things. Well, that is true, but he still would have had the opportunity to make the argument. But the point is, the reasoning that Judge Hollander applied, and this is the same reasoning that was applied in the Aguilera-Rios case in the Ninth Circuit, in the Camacho-Lopez case in the Ninth Circuit, in the cases that have applied St. Cyr retroactively, which is, there's a Fifth Circuit case that would have applied St. Cyr retroactively, had the facts been different, and there are two Second Circuit cases that have applied St. Cyr retroactively, and there is a Tenth Circuit case, Rivera-Nevarez, which said that Leocal, the DUI case, should be applied retroactively. In all of those cases, they are willing to literally put on today's hat, the law governing the law today, as we all understand it should have been applied back then, to assess what happened back then. And so, that's what Judge Hollander was saying, is that assuming he sought judicial review, and we all were applying the correct law, as Descamp has now told us we should have been doing, he would have gotten the opportunity for voluntary departure, and then not been subject to criminal liability. And then the alternative argument I've made, which I feel quite strongly about, because if you look at the facts of this case, there is simply no way, there's no evidence that anyone here actually applied the gotten judicial review. And if you looked at the administrative record at the time, which did not have Shepard-approved documents, showing that his second-degree assault was committed with violence as required by the Johnson case, or that his theft offense actually met all of the definitions of federal theft, as opposed to Maryland theft, which is quite a bit broader, he could have made that argument then, and there's a very good chance he would have won. And that is an alternative argument. Can you tell me where Judge Chertoff and the Third Circuit fell short in their analysis of this issue? Well, are you referring to the Torres case, Your Honor? So, first of all, Torres was actually about just the due process part of the analysis, it wasn't about prejudice. But I think the problem with Torres, and the problem with so many of the cases that the government relies on, that seek to make a distinction between the right to discretionary relief and just removability in general, and this kind of limit, we're going to place a limit on how we as a criminal court are going to assess criminal liability based on whether the relief you were seeking back there is discretionary or not, there's just no principled basis to make that distinction. And if you read the Moore case, excuse me, I'm sorry, Wilson, I apologize, the Wilson case that the government referenced, in Judge Motz's concurrence, she made this exact point, that if what we're looking at fundamental fairness, and if we're looking at what the purpose of the Mendoza-Lopez case is, Mendoza-Lopez is the Supreme Court case that brought us all here, that's the case that said, yes, we can raise the fairness of a removal order as a defense in a 1326 proceeding. There's absolutely no reason to say, you know, it's okay for this proceeding to be fundamentally unfair if all you were seeking was discretionary relief. So, just because what you were seeking back then was discretionary relief, a judge could be biased, a judge could say, I'm not going to give you the relief because I don't like you, because you're a Muslim, because a judge could rely on knowingly false testimony. I mean, Judge Motz was very clear in that concurrence, and she was saying, I don't believe that the Wilson majority intends to make such a broad... Well, maybe I misunderstood the government's argument, but I didn't read their brief to suggest that they would go that far. What they're saying is, it's not fundamentally unfair to apply the law as it then existed at the time. There's nothing inherently unfair about that. That's different than the examples you've posited. Well, the reason that they distinguish and reject the cases that have applied clarifications retroactively, all those cases I cited, the Ninth Circuit case, the St. Cyr cases, is because of this distinction, because some of those cases make a distinction between aliens who could have gotten discretionary relief versus aliens who simply would not have been removed at all. I mean, that's the only... Because the government continues to insist that this would be... What Judge Hollander did was truly unusual, and no courts ever do that. And courts have... They do it, and they have done it. Leocal has been applied retroactively. Moncrief has been applied retroactively. St. Cyr has been applied retroactively. All of these courts, in all of the cases in which these Supreme Court cases have just clarified what was supposed to be happening back then, courts apply them retroactively. And in some cases, and in Wilson, I mean, the court in Wilson and... The court in Wilson didn't actually say that St. Cyr could not be applied retroactively. I think that's important when you're going back and reading the Wilson case to understand that. Wilson did hold that it did not believe there was a due process right to discretionary relief, but that Wilson was looking at whether there was a due process violation. We have a due process violation, an admitted due process violation in our case. Wilson had the opportunity back then to say St. Cyr can't be applied retroactively. We're not going to... We're not going to apply a clarification because back then it was apparent to everybody. IRAIRA had just been passed. EDBA had been passed. It was apparent to everybody that folks who thought they might have qualified for 212C relief no longer qualify for 212C relief. So the Wilson case could have done that, and it did not. It focused on the fact that it didn't think that the due process violation could come from a denial of discretionary relief. The thing I want to really focus the court's attention on, this is something that was also a focus of Judge Motz's concurrence in the Wilson case, and it was also a focus of the Supreme Court in Mendoza-Lopez. It's a point that I think is lost frequently, but it was, I think, very nicely addressed by Judge Hollander. Her decision is that what we're talking about now is criminal liability. We are talking about what standard will we accept before saying, okay, we will rely on a decision, an administrative decision, to cause liability for a felony federal offense. We are not attacking, even though this is called a collateral attack in the language of 13-2060, we're not collaterally attacking the removal order. The removal order stands. Mr. Lopez-Clazo actually could have been removed again based on a reinstatement of that order if ICE chose to do that. What we're talking about is criminal liability and whether someone who was subjected to a proceeding, particularly someone subjected to a proceeding like the administrative proceeding that Mr. Lopez-Clazo was subjected to, whether they should then in the future be criminally liable when there were mistakes made at that time, even if, practically speaking, those mistakes could not have been remedied at that time. What we're saying is we know that what happened back then was wrong. He was charged as being an aggravated felon. The two aggravated felony convictions were the only charges on his notice of intent. We know he was not an aggravated felon and it doesn't matter and it shouldn't matter that his only relief was discretionary and that he would have been removed regardless, that he could have been removed simply for entering without inspection because that wasn't what he was charged with. And we know that this whole administrative proceeding that was essentially initiated by the ICE officers were the judge and the jury and the prosecutor in this case all happened on a piece of paper that was given to Mr. Lopez-Clazo while he was in prison and he had 10 days to respond to this piece of paper that was in a language he didn't understand. What we're saying is, you know, we're sorry that this may seem unfair to the ICE officials who just were trying to do their best at the time, but we're just not going to let that be the cause, form an element of a criminal conviction. That's what Judge Hollander held, Your Honors. And I do want to point you to footnote 15 in Mendoza-Lopez. This is something that I in my brief and really underscores exactly what I was saying, which is Mendoza footnote 15 basically expressed even with the new safeguards that Mendoza-Lopez was creating, it expressed a remaining concern with the mere idea of criminal liability resting on an administrative decision. And the court said, even with the safeguard of a collateral attack, the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling. The propriety of using an administrative decision in such a way remains open to question. And I think that in the, you know, perhaps heightened embrace of really saying, you know, we're going to treat criminal aliens in particular as really bad people and really get them out of here as quickly as we can. I think a lot of courts may be losing sight of that. I mean, that is what the Supreme Court had in mind when it was issuing its decision and saying that, you know, at least in these cases where there has not been judicial review, we are going to take a very careful look and make sure that everything that happened, happened in a fair way. I also want, another fiction I think that the government relies on, and I believe, Judge Diaz, that you asked the court, the government about this is about other collateral attacks, collateral attacks in other contexts, like in AEDPA. And the government relied very heavily on the Foote case. And Foote is completely an opposite, as are collateral attacks in those contexts. So Foote, first of all, involved that miscarriage of justice basis for retroactivity in a collateral attack. And that's a basis you rely on when you don't have a constitutional violation. So in our case, we do have a constitutional violation. We have a due process violation admitted by the government. So Foote should not apply for that reason. But more importantly, as I said before, we are not actually collaterally attacking the removal order. And we're not collaterally attacking any criminal convictions. This is a direct review of a criminal case. And Judge Hollander was, in fact, even though the government criticizes her for doing this, but Judge Hollander was providing direct review of Mr. Lopez-Colazo's removal proceedings. But she was doing that because he was deprived of his right to direct review because he wasn't given notice of that right in a language he could understand. And that's exactly what if you're deprived of that right, then the district court sitting presiding over a criminal case is going, we're going to do that for you. That's the second reason that Foote is distinguishable. But the third point I think is very interesting about the Foote case is that if you actually, if you read Foote, it actually could be used to support our theory. And that is that Foote was saying that when you're looking at this miscarriage of justice basis of retroactivity, that the type of fundamental defect that would warrant a miscarriage of justice finding is a defect involving actual innocence based on the change in the law. And what Foote, the example that Foote gives is that if someone has been convicted of a crime and then years later the same conduct no longer violates the crime, that person should not remain convicted of that as an aggravated felon. And we now know based on a clarification, not even a change of the law, that he was not. So that particular removal order should not form the basis for prosecution under 1326. That is the argument we make, Your Honor. And we believe that Judge Hollander defended her position very well in her very long and thoughtful decision. And we'd ask the court to uphold that decision. Thank you, Ms. Siebert. Thank you. Mr. Rahma. Thank you very much, Your Honor. I know my time is limited and there are a number of issues on the table. I would just say at the outset, of course, we respect the district court's careful attention to this case. We do believe it was quite wrong. The holding that the district court rendered in this case would create a circuit split with numerous other circuits. It is unprecedented in the way that it evaluated due process and in the way that it evaluated prejudice. It would be bad law in the Ninth Circuit, which is really the one circuit that actually acknowledges a due process right to advisement in this context, that of the Second Circuit. No other circuit even recognizes that right. So it contravenes this court's binding authority in But even if just for argument's sake, you acknowledge this due process right to advisement, this due process right to even seek or be informed about a right to voluntary departure, even in the Ninth Circuit, Vidal, Mendoza, Gomez, the district court would be wrong. So really what the defendant is asking this court to do is to affirm a holding that has absolutely no precedent in this country, absolutely no precedent in this country. So I will leave that as a doctrinal matter. Let me talk about some of the issues that that the defense counsel has raised. As far as the argument that ICE misapplied existing law, Judge Diaz, I appreciate your questions about waiver. That claim is absolutely waived. It was not raised in the defendant's motion to dismiss the indictment, which is the operative motion that he needs to file. It wasn't in there. The one place it shows up is Joint Appendix 196, footnote 11, which is a supplemental reply pleading. It's not even his reply to the original government opposition. It was never really raised during the motions hearing, which lasted hundreds of pages in the transcript. The court has seen it. This was a throwaway argument. It's not a preservation argument. It's a throwaway argument. And as Judge Traxler, as you observed in Vinson just a few weeks ago, the district court, this court certainly can affirm on bases not raised in the district court. And I would submit to the court where Judge Hollander, in a 63-page opinion, did not once talk about what the defendant is now talking about on appeal, where we never had an opportunity to really develop the record on the score, this court certainly should not excuse the waiver. And in any event, if you look at page 62 of the Joint Appendix, that document, the charge summary, in my view, clearly is a shepherd document. It's a formal charging document signed by a judicial officer that expressly incorporates the underlying officer's statement of probable cause. So I don't want to spend too much time on that. Judge Diaz, Torres is correct. Judge Chertoff's opinion in Torres is absolutely correct. And indeed, this court and Judge Gregory cited Torres affirmatively and positively in the El Chamy decision. So again, let's think about what the defendant is asking this court to do. Rip open a circuit split with the Third Circuit in Torres, with the Seventh Circuit in Baptiste, with the First Circuit in Sotomayor, with the Ninth Circuit, even in an application of due process principles that are unique to the Ninth Circuit, which are not embraced by this court in Wilson or in El Chamy. It is absolutely unprecedented. And it would create, Your Honors, very difficult problems for law enforcement. I was a little bit surprised that defense counsel talked about issues that are outside of the record. I didn't know that Mr. Lopez was reported with a new removal order, or at least whatever I had heard. It's not in the record. But this is more about than just one criminal case. Because if this court finds that Mr. Lopez is entitled to relief, then every single person in who is similarly situated upon a legal re-entry, even if its removal was way back in 1998, when this court decided curtsy, or 2000, this court would be saying that that removal was somehow fundamentally unfair when it wasn't. When this en banc in U.S. v. Coleman said Maryland's second-degree assault is subject to a modified categorical approach, how are immigration officials supposed to know better than this court en banc? Well, they're not. But I guess you seem to be making a floodgates argument. But do you have any numbers to support that? Not in the record, Your Honor. But I can tell you that courts every day issue decisions of statutory interpretation, like this court's decision in Royal or the reference earlier in this argument. Statutory decisions come out of the circuit courts every single day. And if every single change in statutory law entitles every single illegal re-entry defendant in this country to collaterally attack a prior removal, it is a floodgates argument, right? Because every single day, we have new decisions of statutory decision coming in, some of which are contested. Even the Ninth Circuit is a good example of that. If you look which is one of the cases we cite in our brief, existing Ninth Circuit authority at the time of Mr. Gomez's removal in 2006 held that his prior child sex offense was an aggravated felony. And the Ninth Circuit actually shifted a couple years later. Four years after Mr. Gomez's removal, en banc, the court changed its view of whether that particular offense qualified. And then, of course, DeKalb comes out and overruled the en banc Ninth Circuit. So my point is, every single day, hardworking jurists just like the members of this panel have decisions about statutory interpretation. Sometimes you agree, sometimes you disagree. The question is, are immigration officials acting fundamentally unfairly when they faithfully and correctly apply this court's then-binding authority? And where Mr. Lopez, at the time of his removal in 2007, would not have secured relief on direct appeal. So I hope that answers Your Honor's question. I sort of understand intuitively why, you know, it seems like, well, gosh, isn't it unfair that if the law does shift over time that the defendant shouldn't get the benefit of that? Respectfully, there's a reason why no court has held that. It's because, no, there is nothing fundamentally unfair about a defendant receiving the process he's due, which is a faithful and of the law, at the time of his proceedings. I will just, oops. Okay. Thank you. Your red light's been on quite a while. I'm sorry. Thank you very much. All right.
judges: William B. Traxler, Jr., Roger L. Gregory, Albert Diaz